UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**DIEGO ALEJANDRO UGARTE-ARENAS,**

    Petitioner,

    v.                                                  Case No. 25-C-1721

**DIRECTOR SAM OLSON, et al.,**

    Respondents.

---

**DECISION AND ORDER DENYING 28 U.S.C. § 2241
PETITION FOR HABEAS CORPUS**

---

Petitioner Diego Alejandro Ugarte-Arenas is an unregistered alien and citizen of Venezuela who has lived in the United States without authorization for four years. Petitioner, who is currently being detained at the Dodge County Jail in Juneau, Wisconsin, filed a petition for federal relief pursuant to 28 U.S.C. § 2241, challenging his continued detention by Immigration and Customs Enforcement (ICE) officials during the course of his removal proceedings under 8 U.S.C. § 1229a. Petitioner states that he has been detained for over one month and remains in mandatory detention because, on July 8, 2025, the Department of Homeland Security (DHS) issued a new policy instructing all ICE employees that a noncitizen who has entered the United States without inspection is subject to mandatory detention under 8 U.S.C. § 1225 of the Immigration and Nationality Act (INA). He asserts that his arrest and detention are governed by 8 U.S.C. § 1226, under which he should be provided a prompt bond hearing.

Petitioner claims that his mandatory detention violates the INA and his right to due process. He seeks a writ of habeas corpus requiring that he be released or, in the alternative, that he be provided a prompt bond hearing. For the following reasons, the petition will be denied.

## BACKGROUND AND STATUTORY FRAMEWORK

A.  **Factual Background**

Petitioner is a 31-year-old native and citizen of Venezuela who has lived in the United States since his entry without inspection on November 8, 2021. Petition ¶¶ 2, 22, Dkt. No. 1. On October 23, 2025, Petitioner was arrested pursuant to an ICE arrest warrant during an ICE check-in appointment. *Id.* ¶ 27. ICE placed Petitioner in removal proceedings, where he was charged with having entered the United States without inspection. *Id.* ¶ 28. Petitioner has been detained without bond pending completion of the removal proceedings. *Id.* ¶ 30. The proceedings concerning Petitioner's status and ability to remain in the United States are currently ongoing. Petitioner is requesting asylum, and the next hearing in the proceeding is scheduled for December 9, 2025. *See id.* ¶ 29; Dkt. No. 10 at 3.

B.  **Statutory Framework**

Petitioner challenges DHS and ICE's interpretation of two provisions of the INA that authorize the government to detain individuals pending resolution of removal proceedings: 8 U.S.C. §§ 1225 and 1226. Before turning to the merits of this case, the court will provide a brief overview of the statutes at issue.

   1.  **8 U.S.C. § 1225**

Section 1225 is entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." All aliens who are applicants for admission or otherwise seeking admission to the United States must be inspected by immigration officials. *See* 8 U.S.C. § 1225(a)(3) ("All aliens (including alien crewmen) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be

2

Case 2:25-cv-01721-WCG    Filed 12/08/25    Page 2 of 10    Document 12

inspected by immigration officers."). Subsection (a) concerns the "inspection" of aliens by immigration officers. It provides a definition of "aliens treated as applicants for admission":

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

28 U.S.C. § 1225(a)(1).

Section 1225(b) is entitled "Inspection of applicants for admission" and mandates expedited removal proceedings for certain types of applicants for admission. Subsection (1) provides for inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled. Under this section, if an immigration officer finds that an alien is inadmissible because of fraud or documentation issues, the officer must order the alien removed from the United States without further hearing or review unless the alien indicates an intention to apply for asylum or expresses a fear of persecution. *See* 8 U.S.C. § 1225(b)(1)(A)(i)–(ii). The statute also permits the Attorney General to designate certain other aliens for similar expedited removal so long as those aliens have not been previously admitted and have not shown they were continuously physically present in the United States for the preceding two years. *See* § 1225(b)(1)(A)(iii).

Section 1225(b)(2) addresses the "inspection of other aliens" and provides:

(A) In general

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

(B) Exception

> Subparagraph (A) shall not apply to an alien—

3

> > (i) who is a crewman,
> >
> > (ii) to whom paragraph (1) applies, or
> >
> > (iii) who is a stowaway.
> 
> (C) Treatment of aliens arriving from contiguous territory
>
> > In the case of an alien described in subparagraph (A) who is arriving on land (whether or not at a designated port of arrival) from a foreign territory contiguous to the United States, the Attorney General may return the alien to that territory pending a proceeding under section 1229a of this title.

§ 1225(b)(2).

**2. 8 U.S.C. § 1226**

Section 1226 is entitled "Apprehension and detention of aliens." Subsection (a) states:

> (a) Arrest, detention, and release
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General--
>
> > (1) may continue to detain the arrested alien; and
> >
> > (2) may release the alien on --
> >
> > > (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> > >
> > > (B) conditional parole; but
> >
> > (3) may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

8 U.S.C. § 1226(a). In essence, the statute allows the Attorney General to issue warrants for the arrest and detention of aliens pending a decision on their removability and to either continue the

detention of the arrested alien or release them on bond or parole. *See id.* Section 1226(b) provides that the Attorney General, at any time, may revoke a bond or parole granted under subsection (a), rearrest the alien under the original warrant, and detain the alien. § 1226(b).

Subsection (c) mandates that the Attorney General take into custody aliens who are inadmissible or subject to removal for a variety of criminal offenses. § 1226(c). This section was recently amended by the Laken Riley Act to specifically require the detention of aliens arrested for any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense as well as any crime that results in death or serious bodily injury to another person. *See* § 1226(c)(1)(E)(ii). Aliens who are subject to mandatory detention may only be paroled or released for witness protection purposes. § 1226(c)(4).

## ANALYSIS

A federal court may grant habeas relief to a detainee who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Although federal law places substantial limits on the authority of district courts to review immigration matters, those limitations do not bar this court's consideration of Petitioner's challenge to the statutory framework mandating his detention without a bond hearing. *Rojas v. Olson*, No. 25-cv-1437, 2025 WL 3033967, at *4 (E.D. Wis. Oct. 30, 2025). Petitioner asserts that his continued detention violates both the INA and his right to due process. The court will address each argument in turn.

### A. Petitioner's detention does not violate the INA

Respondents have detained Petitioner under 8 U.S.C. § 1225. Relying on the text of the statute, Respondents argue that Petitioner falls within § 1225(a)'s definition of "applicant for admission" because he was arrested in the United States and was not lawfully admitted. As a result, Respondents assert, Petitioner is subject to § 1225's treatment of applicants for admission.

5

Respondents concede that Petitioner does not meet the requirements for expedited removal under § 1225(b)(1) but argue that he falls within the coverage of § 1225(b)(2). Respondents maintain that § 1225(b)(2) requires the detention of all other "applicants for admission," pending removal proceedings, if an immigration officer determines they are not "clearly and beyond a doubt entitled to be admitted." § 1225(b)(2)(A). Because an immigration officer has not determined that Petitioner is clearly and beyond a doubt entitled to be admitted, Respondents argue, § 1225(b)(2) mandates Petitioner's detention.

Petitioner challenges Respondents' policy that all undocumented noncitizens who entered the United States without inspection are considered applicants for admission and subject to mandatory detention under § 1225(b)(2)(A). Citing the title to § 1225, he argues that section governs detention of "arriving noncitizens" while § 1226 applies to noncitizens already present in the United States. Petition ¶ 48. Because he has been living in the United States for four years, Petitioner argues that § 1225 does not apply to him and that he is statutorily entitled to a bond hearing under § 1226(a).

But the title of a statute should be considered only when the language of the law is ambiguous. *See* 2A SUTHERLAND ON STATUTORY CONSTRUCTION § 47.03 (5th ed. 1992); *see also Eastern Mountain Platform Tennis, Inc. v. Sherwin-Williams Co., Inc.*, 40 F.3d 492, 499 (1st Cir. 1994) ("Because we find no ambiguity in the plain language of the statute, we need not consider the title of the Act in determining the correct construction."). Under the plain terms of the text, Petitioner meets § 1225(a)(1)'s definition of "applicant for admission." To repeat, § 1225(a)(1) defines "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . ." § 1225(a)(1). The Act defines the terms "admission" and "admitted" to mean, "with respect to an alien, the lawful entry of the alien into

the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). It is undisputed that Petitioner did not lawfully enter the United States after inspection and authorization by an immigration officer. It thus follows that Petitioner is an alien "present" in the United States who has not been "admitted." After considering the INA as a whole, the court finds no basis to exclude Petitioner from the definition of "applicant for admission" in § 1225(a)(1).

Petitioner argues that the text of § 1225 makes clear that the terms "applicant for admission" and "seeking admission" do not include individuals who have entered without inspection and are apprehended when already inside the United States. He contends that § 1225(b)(2) only applies to recently arrived noncitizens seeking entry at a border or port of entry. But the definition of "applicant for admission" does not contain any temporal or geographic limitations. Moreover, it would make little sense to reward those undocumented immigrants who successfully evaded detection upon arrival in the United States and traveled into the interior of the country with discretionary release, while mandating the detention of those individuals who were not so successful or who sought entry at a border or port of entry. Construing the statute in such a way would incentivize illegal entry into the country on a massive scale.

Petitioner further argues that he does not fall within the purview of § 1225(b)(2) because it refers to "an alien seeking admission." 8 U.S.C. § 1225(b)(2)(A). He contends he is not "an alien seeking admission" because he is already in the country and has been here for four years. But an applicant for admission who is no longer seeking admission is subject to immediate removal. See 8 C.F.R. § 1235.4 (entitled "Withdrawal of application for admission"). As a matter of fact, however, it is clear Petitioner is seeking admission into the United States. He has filed an

7

application for asylum and is thus seeking authorization to remain in the country. Petitioner is therefore an "alien seeking admission" into the United States subject to § 1225(b)(2)(A).

Next, Petitioner argues that applying § 1225 to noncitizens already present in the United States would render § 1226(c)(1)(E) superfluous. He explains that § 1226(c) was amended by the Laken Riley Act in 2025 to specifically require the custody of individuals who were convicted of certain crimes after entering without inspection. But the Laken Riley Act "was aimed at making sure that certain aliens, whom Congress deemed dangerous, were necessarily detained pending their removal, whether they were lawfully admitted or not, lest they commit further crimes while released." *Rojas*, 2025 WL 3033967, at *9. "Nothing in the Laken Riley Act suggests any Congressional thoughts concerning the issues presented in this case." *Id.*

Finally, Petitioner argues that congressional intent and longstanding historical practice support his position that § 1226 applies. But by its plain terms, § 1226 applies to aliens who are not "applicants for admission" but have been already admitted, such as lawfully admitted aliens or lawful permanent residents. Although Petitioner cites to a majority of district court cases that have adopted his position, the decisions are not precedential, and the Seventh Circuit has not yet addressed this issue. Ultimately, the court does not find those cases as persuasive as the decision of the Board of Immigration Appeals in *Matter of Jonathan Javier Yajure Hurtado*, 29 I. & N. Dec. 216, 224, 2025 WL 2674169 (B.I.A. Sept. 5, 2025), or the decision of Judge Ludwig of this district in *Rojas v. Olson*, No. 25-cv-1437, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025).

Petitioner further asserts that, since the passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, individuals who entered without inspection and were apprehended inside the United States were detained under § 1226(a) and received bond hearings, unless their criminal history rendered them ineligible. The fact that previous administrations did

not seek to administer or enforce the laws Congress had enacted, however, does not change the meaning of those statutes. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024) ("Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority."). "Prior administrations' generous interpretations of these laws, while relevant to understanding that text, do not and cannot rewrite it." *Rojas*, 2025 WL 3033967, at *9. In the end, the court concludes that it must follow the plain language of the statutory text. Under § 1225, Petitioner is an "applicant for admission" subject to mandatory detention.

**B. Petitioner's detention does not violate his right to due process**

Petitioner asserts that his continued detention violates his right to due process. Under the Due Process Clause of the Fifth Amendment, the government may not deprive any person of liberty without due process of law. It is "well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Denmore v. Kim*, 538 U.S. 510, 517 (2003). In *Mathews v. Eldridge*, the United States Supreme Court set forth three factors for courts to consider in resolving due process challenges to procedures that would deprive an individual of his life, liberty, or property: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

As to the first factor, Petitioner asserts that he has been detained since October 2025, preventing him from seeing his family, going to work to support himself, and depriving him of any privacy and freedom of movement. As to the second factor, Petitioner contends that the current government's procedure, subjecting him to mandatory detention under § 1225(b)(2), causes an

erroneous deprivation of his liberty interest in remaining free from detention. Finally, Petitioner argues that the government's interest in maintaining the current procedure is "minimal." Petition ¶ 75. He asserts that any government interest in public safety or ensuring Petitioner attends future immigration proceedings would be satisfied through proper application of § 1226(a), which requires a bond redetermination hearing.

Petitioner has not established that his continued detention violates the Due Process Clause of the Fifth Amendment. Petitioner is an alien who was found in the United States without authorization and is subject to removal proceedings. The current procedures will not cause an erroneous deprivation of Petitioner's liberty interest, given that § 1225(b)(2) mandates detention, as explained above. Consistent with federal law, Petitioner is being provided with the opportunity to oppose removal even though he entered the country illegally. He also has "the key to his release in his own pocket; he can choose to accept removal to his homeland [or another country] under § 1229a." *Rojas*, 2025 WL 3033967, at *13 (citing *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999)). Finally, the government has a "powerful interest in maintaining the detention in order to ensure that removal actually occurs." *Parra*, 172 F.3d at 958. For these reasons, the court concludes that Petitioner's detention does not violate his right to due process.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Petitioner's § 2241 petition (Dkt. No. 1) is **DENIED**. This case is dismissed. The Clerk is directed to enter judgment accordingly.

Dated at Green Bay, Wisconsin this 8th day of December, 2025.

_____
William C. Griesbach
United States District Judge